IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| DAVID W. COLE et al.,<br><br>                Plaintiffs,<br>    v.<br><br>SALT CREEK, INC. et al.,<br><br>                Defendants. | MEMORANDUM DECISION AND ORDER ON THE PARTIES' MOTIONS FOR SUMMARY JUDGMENT AND OTHER RELATED MOTIONS<br><br>Case No. 2:08-cv-928 DN<br><br>District Judge David Nuffer |

Plaintiff David W. Cole brought this action against his former employer, Salt Creek, Inc., and affiliated companies, Nutriad, Inc. and INVE Aquaculture, Inc., to recover monthly bonus payments in the amount of $21,000 per month from July 2006 until his termination in October 2008, which allegedly should have been paid as part of his compensation as a Vice President of Salt Creek.[1] Cole also seeks to recover the value of his participation in Salt Creek's 401(k) plan, which he alleges was denied him beginning in 2003. In his complaint, Cole has alleged claims for breach of contract and ERISA breach of fiduciary duty, as well as a claim for alter ego in which he seeks to hold Salt Creek, Nutriad, INVE Aquaculture and other affiliated entities (collectively, the "INVE entities") jointly and severally liable for his alleged damages.[2]

Salt Creek has moved for summary judgment on all of Cole's claims.[3] Salt Creek argues that Cole's breach of contract claim fails as a matter of law because Cole cannot prove any agreement with Salt Creek to pay him monthly bonus payments beyond his $150,000 annual

---

[1] The pleadings also designate Silver Sands Consulting, LLC as a plaintiff in this matter. However, it does not appear from Plaintiff's memoranda that Silver Sands has any claims in this case separate from those of Cole. Accordingly, Cole and Silver Sands will be collectively referred to in this order as "Cole."

[2] First Amended Complaint, docket no. 38, filed on August 5, 2010.

[3] Defendant Salt Creek, Inc.'s Motion for Summary Judgment, docket no. 94, filed on Mar. 30, 2012.

salary. Salt Creek also asserts that Cole's ERISA claim is barred by the statute of limitations and by Cole's failure to exhaust administrative remedies, and that Cole's contract claim for the lost 401(k) benefits is preempted by ERISA. Finally, Salt Creek argues there is insufficient evidence to establish that Salt Creek is the alter ego of the other INVE entities.

Cole has also moved for summary judgment, but only on his contract claim.[4] Cole contends it is undisputed that Frank Indigne (allegedly the senior manager of all of the INVE entities) agreed on behalf of Salt Creek to pay Cole a $21,000 per month bonus in addition to his annual salary.

Nutriad and INVE Aquaculture have also moved for summary judgment, arguing there is no evidence of any contract between either of them and Cole, and there is insufficient evidence to support Cole's alter ego claim.[5]

Having carefully reviewed the memoranda and other materials submitted by the parties, the court concludes that whether Salt Creek was obligated to pay Cole a monthly bonus in the amount of $21,000 during the period from July 2006 to October 2008 remains in dispute. Additionally, Cole's ERISA claim is not barred by the statute of limitations or the administrative exhaustion requirement because Salt Creek failed to plead those defenses, and Cole's contract claim for the value of participating in Salt Creek's 401(k) plan is not preempted by ERISA. Finally, Cole has not shown a basis for alter ego liability among Salt Creek, Nutriad, and INVE Aquaculture. Accordingly, Cole's summary judgment motion is DENIED, Salt Creek's summary judgment motion is GRANTED IN PART AND DENIED IN PART, and Nutriad's and INVE Aquaculture's respective summary judgment motions are GRANTED.

---

[4] Motion for Summary Judgment, docket no. 92, filed on Mar. 30, 2012.

[5] Defendant Nutriad Inc.'s Motion for Summary Judgment, docket no. 98, filed on Apr. 2, 2012; Defendant INVE Aquaculture, Inc.'s Motion for Summary Judgment, docket no. 96, filed on Mar. 30, 2012.

STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[6] In applying this standard, the Court must "view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment."[7] However, "the nonmoving party must present more than a scintilla of evidence in favor of his position."[8] A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[9]

DISCUSSION

I.  Disputed Issues of Fact Preclude Summary Judgment on Cole's Claim for the Monthly Bonus Payments.

Cole was an employee and shareholder of Salt Creek until 2002, when he sold his Salt Creek shares to Salt Creek Holdings, Inc., an INVE affiliate. As part of that transaction, Cole and Salt Creek executed an Employment Agreement, dated October 1, 2002.[10] Under the Employment Agreement, Salt Creek agreed to employ Cole as a Vice President of Salt Creek for a term of one year (from October 1, 2002 to September 30, 2003).[11] In exchange for Cole's services, Salt Creek agreed, among other things, to pay him an annual salary of $150,000 and to

---

[6] Fed. R. Civ. P. 56(a).

[7] *Mathews v. Denver Newspaper Agency LLP*, 649 F.3d 1199, 1204 (10th Cir. 2011) (internal quotations omitted).

[8] *Ford v. Pryor*, 552 F.3d 1174, 1178 (10th Cir. 2008).

[9] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kerber v. Qwest Group Life Ins. Plan*, 647 F.3d 950, 959 (10th Cir. 2011).

[10] Employment Agreement ("Employment Agreement"), docket no. 38-1, filed on Aug. 5, 2010.

[11] *Id.* at ¶¶ 1, 5.

allow him "to participate in [Salt Creek's] 401(k) plan . . . which shall be of the same kind and type [Salt Creek] most recently provided [Cole]."[12]

Cole has testified that in addition to his compensation under the Employment Agreement, Frank Indigne, as a senior manager of Salt Creek, promised Cole that he would receive an additional bonus payment in the amount of at least $21,000 per month for as long as his employment by Salt Creek continued.[13] The parties dispute whether Frank Indigne was indeed a manager of Salt Creek at the time this promise was allegedly made.[14] There is no mention of the promised bonus payments in the Employment Agreement. However, Cole has produced an unsigned note, which he claims evidences the agreement to make the bonus payments.[15] More importantly, it is undisputed that from November 4, 2002 through April 2006, INVE Asia (an INVE affiliate) made monthly $21,000 payments to Plaintiff Silver Sands, LLC, which is owned by Cole.[16] Cole has testified that these payments were made to Silver Sands on his behalf, and at his direction, as compensation for his employment with Salt Creek.[17]

Rather than attempt to refute Cole's assertions with evidence from Mr. Indigne himself, Salt Creek argues that Cole's testimony is barred by the parol evidence rule and the rule against hearsay. Salt Creek has also filed a motion to strike Cole's testimony concerning Mr. Indigne's

---

[12] *Id.* at ¶ 2(a)-(h).

[13] Declaration of David Cole at ¶ 4, docket no. 93-2, filed on Mar. 30, 2012.

[14] Memorandum in Opposition to Salt Creek, Inc.'s Motion for Summary Judgment at 7-8, docket no. 107, filed on Apr. 30, 2012.

[15] Proposal to Dave Cole, docket no. 93-2, filed on Mar. 30, 2012.

[16] Memorandum in Opposition to Salt Creek, Inc.'s Motion for Summary Judgment at 10, docket no. 107, filed on Apr. 30, 2012.

[17] Deposition of David Cole at 50:6-52:15, docket no. 93-1, filed on Mar. 30, 2012.

purported statements.[18] Without Cole's inadmissible testimony, Salt Creek asserts that Cole has no evidence to support his claim that Salt Creek agreed to make the monthly bonus payments.

Cole's testimony and the history of $21,000 monthly bonus payments are not barred by the parol evidence rule. Under Utah law, which governs the Employment Agreement,[19] parol evidence — "evidence of contemporaneous conversations, representations, or statements" — is not admissible to vary or contradict the unambiguous terms of an integrated contract.[20] The Employment Agreement appears to be fully integrated, as demonstrated by the integration clause contained in paragraph nine.[21] However, the Employment Agreement expired under its own terms on September 30, 2003.[22] After September 30, 2003, Cole's employment at Salt Creek was no longer governed by the Employment Agreement and became an at-will employment relationship.[23] For purposes of Cole's compensation in 2006-2008, Cole's testimony concerning Indigne's statements does not seek to change the terms of the Employment Contract in effect in 2002-2003. Therefore, although the integrated but expired Employment Agreement is persuasive evidence of the terms of Cole's continuing employment, it does not operate to preclude Cole's testimony as to the terms of his employment after September 30, 2003. Moreover, Cole's testimony is bolstered by the history of monthly bonus payments made from November 2002 through April 2006, which post-date the Employment Agreement and are

---

[18] Motion to Strike Declaration and Deposition Testimony of David Cole, docket no. 105, filed on Apr. 30, 2012.

[19] Employment Agreement at ¶ 13.

[20] *Tangren Family Trust v. Tangren*, 182 P.3d 326, 330 (Utah 2008).

[21] Employment Agreement at ¶ 9 (stating that the Employment Agreement "contains the entire employment agreement of the parties" and "supersedes any prior written or oral employment agreement between the parties").

[22] Employment Agreement at ¶ 5.

[23] *Touchard v. La-Z-Boy Inc.*, 148 P.3d 945, 948 (Utah 2006) ("Under Utah law, all employment relationships entered into for an indefinite period of time are presumed to be at will.") (internal quotations omitted).

therefore not parol evidence in any event.[24] Salt Creek has offered no evidence or explanation as to the reason for these payments.

Likewise, Cole has submitted sufficient evidence that Frank Indigne was authorized to speak on behalf of Salt Creek, such that Indigne's statements constitute party admissions under Fed. R. Evid. 801(d)(2), to avoid application of the hearsay rule. In addition to the substance of Mr. Indigne's purported statements, Cole has testified that Indigne was a senior manager of Salt Creek.[25] As an officer of Salt Creek at all relevant times, Cole has sufficient foundation for this testimony. Additionally, Cole has submitted evidence that the officers of Salt Creek, and other INVE affiliates, were ultimately responsible to Indigne.[26] Cole's testimony concerning Mr. Indigne's agreement on behalf of Salt Creek as to Cole's compensation is therefore not hearsay.

The Employment Agreement on the one hand, and Cole's testimony and more than three years of monthly bonus payments on the other hand, create a genuine issue of material fact as to whether Salt Creek was obligated to make $21,000 monthly bonus payments to Cole as part of his employment compensation from July 2006 to October 2008, precluding summary judgment on Cole's contract claim.

II.     Cole's ERISA Claim Is Not Barred by Salt Creek's Unpleaded Defenses.

In his claim under ERISA, Cole alleges that Salt Creek breached its fiduciary duties to Cole by terminating Cole's participation in Salt Creek's 401(k) plan and by refusing to provide

---

[24] *Ward v. Intermountain Farmers Ass'n*, 907 P.2d 264, 268 (Utah 1995) ("Simply stated, the [parole evidence] rule operates . . . to exclude evidence of *prior or contemporaneous* conversations, representations, or statements offered for the purposes of varying or adding to the terms of an integrated contract.") (emphasis added).

[25] Declaration of David Cole at ¶ 4, docket no. 93-2, filed on Mar. 30, 2012.

[26] Memorandum in Opposition to Salt Creek's Motion to Strike Declaration and Deposition Testimony of David Cole at 2-4, docket no. 122, filed on May 22, 2012.

matching contributions to Cole.[27] Salt Creek argues that Cole's ERISA claim is barred by the statute of limitations and by his failure to exhaust administrative remedies. However, Salt Creek failed to plead either of these defenses, as is required under Fed. R. Civ. P. 8(c).[28] Recognizing this deficiency, Salt Creek (as well as Nutriad and INVE Aquaculture) has moved for leave to amend its answer to add these defenses and asks the court to consider them for purposes of summary judgment.[29]

Salt Creek's request to amend, which was filed more than three years after this case was filed and nearly two years after the deadline for amending pleadings, is too late.[30] As explanation for Salt Creek's lengthy delay, Salt Creek's counsel states that she was unaware of the administrative exhaustion requirement until she briefed the pending summary judgment motions, and that she somehow did not become aware of the applicable statute of limitations until reviewing Cole's discovery responses.[31] However, Salt Creek has not cited to any facts underlying its proposed defenses of which it was not aware when this case was first filed in November 2008. Salt Creek's explanation for the three-year delay is therefore inadequate.[32] Moreover, Salt Creek's proposed defenses involve at least some fact-sensitive issues on which

---

[27] First Amended Complaint at ¶ 31, docket no. 38, filed on Aug. 5, 2010. Although he pleaded his ERISA claim against "Defendants" generally, Cole has clarified that his ERISA claim is against only Salt Creek directly. Memorandum in Opposition to INVE Aquaculture's Motion for Summary Judgment at 27, docket no. 108, filed on Apr. 30, 2012.

[28] Defendant Salt Creek, Inc.'s Answer to Plaintiffs' Amended Complaint, docket no. 39, filed on Aug. 23, 2010.

[29] Defendants' Motion for Leave to File First Amended Answer, docket no. 137, filed on Jun. 25, 2012.

[30] Complaint, docket no. 2-2, dated Nov. 20, 2008; Order Granting Stipulated Motion to Amend Scheduling Order and Amended Scheduling Order, docket no. 78, filed on Dec. 28, 2011. For purposes of delay, Defendants' summary judgment motions may be considered as requests for leave to amend under Fed. R. Civ. P. 15. *Pater v. City of Casper*, 646 F.3d 1290, 1299 (10th Cir. 2011).

[31] Declaration in Support of Motion for Leave to File Amended Answer and to Amend Scheduling Order at ¶ 5, docket no. 138-1, filed on Jun. 25, 2012.

[32] *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1206 (10th Cir. 2006) ("[C]ourts have denied leave to amend where the moving party was aware of the facts on which the amendment was based for some time prior to the filing of the motion to amend.") (internal quotations omitted).

Cole was unable to conduct discovery before the November 16, 2011 fact discovery deadline, which expired more than four months before Salt Creek filed its summary judgment motion.[33] Accordingly, Salt Creek's request to amend was unduly delayed and would result in unfair prejudice to Cole, and Salt Creek has not shown good cause to amend the deadline for amending pleadings.[34] Salt Creek's request for leave to amend is therefore denied, precluding summary judgment on the defenses that were not pleaded.[35]

III.   Cole's Alternative Contract Claim for Failure to Provide 401(k) Participation Is Not Preempted by ERISA.

In his complaint, Cole alleges that Salt Creek failed to provide 401(k) participation and requisite matching contributions in breach of the Employment Agreement after Salt Creek determined that Cole was ineligible to participate in the plan.[36] Salt Creek contends that this contract claim is preempted by ERISA.

ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan."[37] Among other laws, ERISA preemption reaches "common-law rules that provide remedies for misconduct growing out of the administration of [an] ERISA plan."[38] However, "if there is no effect on the relations among the principal ERISA entities—the

---

[33] Order Granting Stipulated Motion to Amend Scheduling Order and Amended Scheduling Order, docket no. 78, dated Dec. 28, 2011; Memorandum in Opposition to Defendants' Motion for Leave to File First Amended Answer 7-8, docket no. 143, filed Jul. 12, 2012.

[34] The court notes that Defendants have forcefully argued for strict enforcement of the deadline for amended pleadings in this case in another context.  *See* Defendants' Memorandum in Opposition to Plaintiffs' Motion to Consolidate, docket no. 128, filed on May 29, 2012.

[35] Salt Creek also seeks summary judgment on grounds that compensatory damages are not available for Cole's ERISA breach of fiduciary duty claim.  However, both parties agree that Cole may recover any lost benefits if he is successful on his ERISA claim, and Cole has clarified that he seeks only the recovery of lost benefits on that claim.  Defendant Salt Creek, Inc.'s Reply in Support of Motion for Summary Judgment at 49, docket no. 125, filed on May 22, 2012; Memorandum in Opposition to Salt Creek, Inc.'s Motion for Summary Judgment at 34, docket no. 107, filed on Apr. 30, 2012.

[36] First Amended Complaint at ¶ 24, docket no. 38, filed on Aug. 5, 2010.

[37] 29 U.S.C. § 1144(a).

[38] *Airparts Co. v. Custom Benefit Servs. of Austin, Inc.*, 28 F.3d 1062, 1064-65 (10th Cir. 1994).

employer, the plan, the plan fiduciaries, and the beneficiaries—there is no preemption."[39] "What triggers ERISA preemption is not just any indirect effect on administrative procedures but rather an effect on the primary administrative functions of benefit plans, such as determining an employee's eligibility for a benefit and the amount of that benefit."[40]

The court views Cole's contract claim for the value of the allegedly promised 401(k) participation as an alternative claim to his ERISA claim. In other words, in the event it is found in this action that Cole was indeed ineligible to participate in Salt Creek's 401(k) plan, and is therefore not entitled to benefits under the plan, Cole seeks to recover the value of the promised participation under the Employment Agreement. Cole's contract claim thus assumes that Cole was indeed ineligible to participate in the plan. Viewed in this light, Cole's contract claim seeks only to recover the value of his benefits from his employer as a matter of compensation and does not affect the administration of the ERISA plan or the relationship among the principal ERISA entities. Accordingly, Cole's common law contract claim does not relate to an ERISA plan and is therefore not preempted.

IV.  Cole Has Not Stated a Basis for Alter Ego Liability in this Case.

As reflected in his summary judgment memoranda, Cole's theory of this case is that he was denied promised compensation for his services as an employee of Salt Creek and that alter ego liability for such should be extended to all of the INVE entities.[41] Of course, alter ego

---

[39] *Id.* at 1065.

[40] *Id.* (internal quotations omitted).

[41] Memorandum in Support of Motion for Summary Judgment at 2-4, docket no. 93, filed on Mar. 30, 2012; Memorandum in Opposition to Salt Creek, Inc.'s Motion for Summary Judgment at 2, docket no. 107, filed on Apr. 30, 2012; Memorandum in Opposition to INVE Aquaculture's Motion for Summary Judgment at 3, docket no. 108, filed on Apr. 30, 2012; Memorandum in Opposition to Nutriad's Motion for Summary Judgment at 3, docket no. 115, filed on May 3, 2012.

liability cannot be extended to persons or entities that are not parties to this case.[42] Accordingly, the issue in this case is whether liability for the compensation allegedly denied Cole may be extended to INVE Aquaculture and Nutriad. Cole has clarified that this is the only basis for liability against INVE Aquaculture and Nutriad.[43]

Under Utah law, corporate liability may be extended to shareholders of the corporation under the theory of alter ego if there is "(1) [s]uch a unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist, but the corporation is, instead, the alter ego of one or more individuals; and (2) if observed, the corporate form would sanction a fraud, promote injustice, or result in inequality."[44] Alter ego liability may be extended to both individual shareholders and parent companies.[45]

However, neither Nutriad nor INVE Aquaculture is a shareholder of Salt Creek.[46] Rather, Cole alleges they are affiliates in a group of companies dominated by INVE, BV and the Indigne family.[47] The parties have not cited, and the court's own research has not yielded, any case in Utah extending alter ego liability to a non-shareholder affiliate company. Cole's claim seems to be based on the theory of enterprise liability, which allows for joint liability among related businesses that "are not operated as separate entities but rather integrate their resources to

---

[42] *Bushnell v. Barker*, 274 P.2d 968, 971 (Utah 2012) (holding alter ego claim is not a substantive claim, but a procedural mechanism to extend liability to alter egos of the defendant corporation).

[43] Memorandum in Opposition to INVE Aquaculture's Motion for Summary Judgment at 27, docket no. 108, filed on Apr. 30, 2012; Memorandum in Opposition to Nutriad's Motion for Summary Judgment at 30, docket no. 115, filed on May 3, 2012.

[44] *Colman v. Colman*, 743 P.2d 782, 786 (Utah Ct. App. 1987).

[45] *Chatterley v. Omnico, Inc.*, 485 P.2d 667 (Utah 1971) (affirming alter ego judgment against parent corporation for wages of subsidiary's employees).

[46] Memorandum in Opposition to Cole's Motion for Partial Summary Judgment at p. 4 ¶ 1, docket no. 104, filed Apr. 30, 2012.

[47] *See, e.g.*, Memorandum in Opposition to INVE Aquaculture's Motion for Summary Judgment at 12-18, docket no. 108, filed on Apr. 30, 2012.

achieve a common business purpose."[48] However, the "single business enterprise" doctrine has been applied in only a handful of jurisdictions, including Texas and Louisiana, beyond which it appears to have no momentum.[49] Given that Utah courts "are very reluctant to pierce the corporate veil," the court cannot conclude that Utah would adopt the enterprise liability theory.[50] Therefore, even assuming the truth of all of the facts set forth in his memoranda, Cole has not shown a basis for extending alter ego liability to Salt Creek's non-shareholder affiliates, Nutriad and INVE Aquaculture, under Utah law. Defendants are therefore entitled to summary judgment on Cole's alter ego claim. Additionally, as alter ego is the sole basis for asserting personal jurisdiction over Nutriad,[51] Nutriad must be dismissed for want of jurisdiction.

## CONCLUSION AND ORDER

IT IS THEREFORE ORDERED that Cole's Motion for Summary Judgment (docket no. 92) is DENIED.

IT IS FURTHER ORDERED that Defendant Salt Creek, Inc.'s Motion for Summary Judgment (docket no. 94) is GRANTED IN PART with respect to Cole's claim for alter ego (claim no. 3) and DENIED IN PART with respect to Cole's claims for breach of contract (claim no. 1) and ERISA breach of fiduciary duty (claim no. 2).

IT IS FURTHER ORDERED that Defendant INVE Aquaculture, Inc.'s Motion for Summary Judgment (docket no. 96) and Defendant Nutriad Inc.'s Motion for Summary Judgment (docket no. 98) are GRANTED, and all of Cole's claims against INVE Aquaculture, Inc. and Nutriad Inc. are DISMISSED WITH PREJUDICE.

---

[48] *Acad. of Skills & Knowledge, Inc. v. Charter Sch., USA, Inc.*, 260 S.W.3d 529, 538-39 (Tex. Ct. App. 2008).

[49] Kurt A. Strasser, *The Changing Face of Parent Subsidiary Corporation: Entity v. Enterprise Liability*, 37 Conn. L. Rev. 637, 647 (Spring 2005).

[50] *d'Elia v. Rice Dev., Inc.*, 147 P.3d 515, 522 (Utah Ct. App. 2006).

[51] Memorandum in Opposition to Nutriad's Motion for Summary Judgment at 27-29, docket no. 115, filed on May 3, 2012.

IT IS FURTHER ORDERED that Defendants' Motion for Leave to File First Amended Complaint (docket no. 137) is DENIED.

IT IS FURTHER ORDERED that the Motion to Strike Declaration and Deposition Testimony of David Cole (docket no. 105) and the Motion to Strike (docket no. 110) are DENIED.

Dated October 29, 2012.

BY THE COURT:

_____
David Nuffer
United States District Judge